# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALENTINE UNDERWOOD,<br><br>   Plaintiff,<br><br>   v.<br><br>KNOWLES, et al.,<br><br>   Defendants.<br>_____/ | CASE NO. 1:08-cv-00986-GSA PC<br><br>ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE<br><br>(Doc. 1)<br><br>RESPONSE DUE WITHIN THIRTY DAYS |

    Plaintiff Valentine Underwood ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on July 17, 2008. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at California Correctional Institution ("CCI"). Plaintiff alleges violations under the First Amendment, the Eighth Amendment, and the Due Process Clause of the Fourteenth Amendment, in addition to state law claims, against M. Knowles, Warden at Kern Valley State Prison ("KVSP"); T.S. Arlitz, Associate Warden at KVSP; Captain S. Frauenhein; Lieutenant J. Whitehead; Senior Hearing Officer D. Schroeder; Sergeant S. Lantz; Correctional Officer ("CO") S. Martin; CO M. Northcutt; CO D. Caviness; CO A. Trajillo; CO P. Truitt; CO J. Hart; CO Caudillo; CO Playa; CO N. Meza; CO J. Fambrough; CO J. Urbano; Medical Technician Assistant ("MTA") Ethridge; MTA Kurtz; Dr. Akano; Chief Inmate Appeals Branch N. Grannis; Appeals Coordinator C. Pfeiffer at KVSP; Correctional Counselor ("CC") J. Flory at KVSP; CC Torres at CCI; and CC Chapman at CCI. For the reasons set forth below, Plaintiff is ordered either to file an amended complaint or to notify the

Court of his willingness to proceed only on the claims found to be cognizable in this order within thirty days.

## I. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusion are not. Id. at 1949.

## II. Plaintiff's Claims

### A. Summary of Complaint

Plaintiff's allegations arise from incidents that occurred while he was incarcerated at KVSP and CCI. On October 2, 2006, at KVSP, Plaintiff was placed in administrative segregation ("Ad-Seg"). Plaintiff alleges that Defendant Hart called him a "nigger" before placing him in Ad-Seg. (Compl. Due Process p. 1 ¶ 1, Retaliation p. 1 ¶1 .) On October 4, Plaintiff filed an inmate appeal against Defendant Hart for calling him a "nigger." (Compl. Due Process p. 1 ¶1.) On October 24, 2006, Defendant Hart issued Plaintiff a general chrono, stating that his TV was being confiscated for having been altered. Plaintiff promptly filed another inmate appeal against Defendant Hart for confiscating his TV.

After being released from Ad-Seg, Plaintiff found that some of his personal property had disappeared while he was in Ad-Seg. On November 15, 2006, Plaintiff filed an inmate appeal

against Defendant Hart and against Defendants Caudillo and Playa, because they were identified as officials responsible for taking an inventory of his property. On November 20, 2006, Plaintiff filed another inmate appeal against Defendant Hart for making threatening statements against him.

Plaintiff alleges that on November 21, 2006, Defendants Northcutt and Martin approached Plaintiff because they wanted to know why Plaintiff had been talking to Defendant Lieutenant Whitehead the previous day. Plaintiff told Defendants Northcutt and Martin that he told Defendant Whitehead he was having difficulty with some of the officers, including Defendants Northcutt and Martin, since filing an inmate appeal against Defendant Hart. Defendant Northcutt then pepper sprayed him, and hit him in the face with the pepper spray can. Defendant Martin also struck Plaintiff repeatedly with his baton. Plaintiff tried to hit back, and then laid down on the floor on his stomach. Defendants Northcutt and Martin continued to kick and punch Plaintiff. Several other correctional officers rushed in and struck Plaintiff as well. Plaintiff was pepper sprayed again, had a bag pulled over his head, and then was handcuffed.

Defendant Whitehead instructed two officers to escort Plaintiff to the clinic, where Dr. Dileo had Plaintiff's head, left hand, and ribs x-rayed. Dr. Dileo also cleaned the bite wound on Plaintiff's right hand, gave him a tetanus shot, and sutured the area above Plaintiff's right eye. Dr. Dileo gave Plaintiff some painkillers and a vest to wear over his rib area. Plaintiff alleges that he also had a swollen left hand, fingers and wrist; lumps all over his head; scratches and abrasions on his lower back; and bruises all over his body. He also bled from the cut above his right eye, and from his nose, and right hand. Plaintiff alleges that he suffered from blurred vision, lower back pain, and nose bleeds as a result of the assault.

Plaintiff alleges that Defendant Flory incorrectly stated that Plaintiff kneed Defendant Flory. Plaintiff also alleges that Defendant Flory tried to stop Defendant Northcutt from hitting Plaintiff with a pepper spray can. Plaintiff alleges that Defendants Carviness, Lantz, Trujillo, Truitt, and Fambrough also kicked and struck him. Plaintiff filed an inmate appeal on November 29, 2006, regarding the attack on November 21, 2006. The appeal was also ultimately rejected as being untimely. Plaintiff was subsequently found guilty of battery on a peace officer, and he filed an appeal for being denied a fair hearing regarding the November 21, 2006 incident.

Plaintiff alleges that for several days after November 24 or 25, he asked for medical care because his injuries caused him pain, but did not receive any medical care except for some painkillers from Defendant Ethridge on November 29, 2006. Plaintiff was seen by Defendant Dr. Akano on December 13, 2006, at which time he told Defendant Akano that he was suffering from blurred vision, and lower back pain, and that the bite on his right hand had become infected. After examining Plaintiff, Defendant Akano told Plaintiff that he was in good health and prescribed painkillers and a cream. Plaintiff continued to seek additional medical care. On January 31, 2007, Defendant Akano prescribed Plaintiff some painkillers for his lower back pain, and ordered another x-ray of Plaintiff's back. On February 6, 2007, Plaintiff had his lower back x-rayed.

On March 13, 2007, Plaintiff was transferred to CCI. After Plaintiff arrived at CCI, he was referred to a nerve specialist for the bite on his right hand, an orthopedic surgeon for injuries to his right hand and right elbow, and for physical therapy for lower back pain. Plaintiff alleges that the superior medical care he has received at CCI proves that the medical care he received at KVSP was deficient.

Plaintiff alleges that Defendant Captain Frauenhein approached him on November 23 or 24, 2006, to see his injuries and to inform him that he would be transferred to avoid such an incident in the future. Plaintiff alleges that Defendant Frauenhein told him that Plaintiff's statement regarding the November 26, 2006, incident was consistent with other witnesses' statements.

Plaintiff alleges that Defendants Frauenhein and Tyson approached him on February 1, 2007, to inform him that they knew what had actually happened on November 21, 2006, but that he was to be placed in the Security Housing Unit ("SHU") for eight months for assaulting staff, after which he would be transferred elsewhere. Plaintiff alleges that the usual term for assaulting staff is twelve months to eighteen months, but Defendant Associate Warden Arlitz agreed with Defendants Frauenhein and Tyson, and gave him an eight month term, mitigated to six months.

On February 4, 2007, Plaintiff filed an inmate appeal after having his incoming and outgoing mail disappear, and after finding that Defendant Northcutt had been reassigned to the mail room after the November 21, 2006, incident.

///

Plaintiff also alleges that he submitted several inmate appeals, which were often screened out by Defendant Pfeiffer for being untimely or incomplete. Plaintiff alleges that the refusal to process his inmate appeals was a violation of his First Amendment right to petition the government for redress of his grievances.

On March 13, 2007, Plaintiff was transferred to CCI and was housed in the SHU. Plaintiff alleges that he was scheduled to be released from the SHU on May 21, 2007, but instead was placed in Ad-Seg pending space availability in general population. On July 6, 2007, Plaintiff was assigned to the Behavior Modification Unit ("BMU") by Defendants Torres and Chapman on the basis that he was guilty of battering a correctional officer at KVSP. He was not allowed to keep his personal property in BMU and had to it send it home. On October 6, 2007, Plaintiff was released from BMU into the general population and had to purchase all of his property, as he was not allowed to receive back any property that had been mailed home.

Plaintiff seeks damages, an injunction preventing future retaliation, removal of all negative documents from his central file regarding the November 21, 2006, attack, and restoration of his time credits, work group, and privilege groups. Plaintiff also asks that criminal charges be filed against Defendants, and that he be transferred to an institution of his choice.

### B. Eighth Amendment

#### 1. Excessive Force

Plaintiff alleges that he was assaulted by Defendants Northcutt, Martin, Flory, Carviness, Lantz, Trujillo, Truitt, and Fambrough on November 21, 2006, in violation of the Eighth Amendment. The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations omitted). When a prison security measure is undertaken in response to an incident, the question of whether the measures taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. at 6.

The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force

5

authorized or applied was unreasonable, and hence unnecessary." Whitley v. Albers, 475 U.S. 312, 319 (1986); see also Hudson, 503 U.S. 1. Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 321-322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1970)).

Moreoever, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10 (internal quotations marks and citations omitted). Although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates the Eighth Amendment. Id.; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). Plaintiff alleges sufficient facts to state a claim for excessive force against Defendants Northcutt, Martin, Carviness, Lantz, Trujillo, Truitt, and Fambrough.

### 2.   **Medical Care**

Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.1997) (en banc). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he or she must then show that prison officials responded to the serious medical need with deliberate indifference. Id. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir.1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir.2004). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319). "Deliberate indifference is a high legal standard." Toguchi, 391 F.3d at 1060. "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiff alleges that he did not receive adequate medical care at KVSP. Assuming that Plaintiff had a serious medical need, Plaintiff fails to allege sufficient facts to show deliberate indifference on the part of Defendants. Plaintiff asked for, and received medical care for his injuries. Although he may not have received the kind of medical care he asked for, mere differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Franklin v. Oregon, 662 F.2d 1337, 1334 (9th Cir.1981). Defendants' conduct in failing to provide medical care to Plaintiff's satisfaction fails to rise to the level of constitutional violation. Thus, Plaintiff fails to state a claim against Defendants Ethridge, Kurtz, and Akano.

**C.    First Amendment**

Plaintiff alleges that he was assaulted on November 21, in retaliation for an inmate appeal he filed against Defendant Hart on November 20, 2006, and that Defendant Northcutt confiscated his mail in retaliation for the November 21, 2006, assault. Plaintiff also alleges that he received inadequate medical care, and was found guilty of battery on a correctional officer, held in Ad-Seg for thirty-eight days, and placed in BMU for three months as retaliation.

Allegations of retaliation against a prisoner's First Amendment rights to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Plaintiff alleges sufficient facts to state a retaliation claim against Defendants Northcutt and Martin. However, Plaintiff fails to state a retaliation claim against other defendants because he fails to allege sufficient facts to link the alleged retaliation with his protected conduct.

**D.    Fourteenth Amendment: Due Process**

**1.    Inmate Appeals**

Plaintiff alleges that the processing of his inmate appeals was in violation of due process. Specifically, Plaintiff alleges that he is dependent on prison officials to convey and return his appeals, and several times, prison officials returned his appeals to him after the fifteen day period within which he could submit his appeals to the next level of review. As a result, Plaintiff had several appeals which were rejected as being untimely even though they were initially filed in a timely manner.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for

8

which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Thus, since he does not have a liberty interest in the processing of his appeals, Plaintiff fails to state a cognizable claim for the processing and/or reviewing of his inmate appeals.

### 2. Mail

Plaintiff alleges that his incoming and outgoing mail were withheld and confiscated on multiple occasions by Defendant Northcutt. Prisoners have a property interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974), and also a liberty interest in the "uncensored communication by letter," although this interest is "qualified of necessity by the circumstance of imprisonment." Procunier v. Martinez, 416 U.S. 396, 417-18 (1974); see also Frost v. Symington, 197 F.3d 348, 353 (9th Cir. 1999)(prisoners have a "Fourteenth Amendment due process liberty interest in receiving notice that . . . incoming mail is being withheld by prison authorities"), citing Thornburgh v. Abbott, 490 U.S. 401, 406 (1989). However, where a prisoner alleges a deprivation of a liberty or property interest caused by an unauthorized negligent or intentional action of a prison official, the prisoner cannot state a due process claim if a meaningful postdeprivation remedy for the loss is available. See Zinerman v. Burch, 494 U.S. 113, 129-32

(1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam); Taylor v. Knapp, 871 F.2d 803, 805 (9th Cir. 1989); New Alaska Dev. Corp. v. Guetschow, 869 F.2d 1298, 1305 (9th Cir. 1989). Plaintiff's allegations imply that Defendant Northcutt intentionally deprived him of his mail in an unauthorized manner. Thus, Plaintiff cannot state a due process claim for the confiscation of his mail.

### 3. Excessive Force, Medical Care, and Retaliation

Plaintiff alleges that being subject to excessive use of force and retaliation, and being denied adequate medical were in violation of due process. However,:

> [t]o establish a violation of substantive due process . . . , a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims.

Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), cert. denied, 520 U.S. 1240 (1997); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998). In this case, the First and the Eighth Amendments "provide[s] [the] explicit textual source of constitutional protection . . . ." Patel, 103 F.3d at 874. Therefore, the First and the Eighth Amendments rather than the Due Process Clause of the Fourteenth Amendment governs Plaintiff's claims of excessive force, medical care, and retaliation.

### E. Negligent Medical Care Claim

Plaintiff alleges that medical care that he received at KVSP was inadequate and negligent. California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2006.) Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings

County (Bodde), 32 Cal.4th 1234, 1245 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Superior Court, 32 Cal.4th at 1245; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff fails to allege compliance with the California Tort Claims Act, thus he fails to state a negligence claim under California law.

### F.    Linkage Requirement

Plaintff also names Knowles, Arlitz, Frauenhein, Whitehead, Lantz, Schroeder, Meza, Caudillo, Playa, and Urbano as defendants but fails to allege any facts linking these defendants to any alleged deprivation of Plaintiff's rights. Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. at 743-44.

Defendant Urbano opened Plaintiff's cell door on November 21, 2006; Plaintiff filed an inmate appeal against Defendants Caudillo and Playa for misplacing his property on November 15, 2006; Defendant Arlitz placed Plaintiff in the SHU for six months for assaulting staff; Defendants Frauenhein and Whitehead were supervisors of other defendants. However, Plaintiff alleges no facts showing that Defendants Urbano, Caudillo, Playa, Arlitz, Frauenhein, and Whitehead took any action to deprive Plaintiff of his constitutional rights, and thus he fails to state any claims against them.

Plaintiff alleges absolutely no facts regarding Knowles, Lantz, Schroeder and Meza and thus fails to link them to any alleged deprivation of his constitutional rights.

///

**G.     Claims for Lost Time and Good-Time Credits**

As a relief, Plaintiff seeks to have lost time credits, work group, and privilege groups reinstated, in addition to damages. "[A] state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (citing to Heck v. Humphrey, 512 U.S. 477 (1994). Where, as here, "success in a . . . [section] 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." Muhammad v. Close, 540 U.S. 749, 751 (2004) (citing to Heck v. Humphrey, 512 U.S. 477 (1994)); Edwards v. Balisok, 520 U.S. 641, 648 (1997) (applying Heck to a prison disciplinary hearing where good-time credits were affected). Because the loss of time credits imposed at the disciplinary hearing affects the duration of Plaintiff's sentence, any claims arising from the disciplinary hearing and finding of guilt are barred until such time as Plaintiff invalidates the result of the disciplinary hearing.

**H.     Claim for Equitable Relief**

In addition to damages, Plaintiff seeks injunctive and declaratory relief. "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) (citations omitted); Jones v. City of Los Angeles, 444 F.3d 1118, 1126 (9th Cir. 2006). "Abstract injury is not enough." Lyons, 461 U.S. at 101. "[P]laintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Id. (internal quotations and citations omitted). "The key issue is whether the plaintiff is 'likely to suffer future injury.'" Jones, 444 F.3d at 1126 (quoting Lyons at 105, 1667).

///

Additionally, any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. §3626(a)(1)(A).

In this case, Plaintiff seeks the issuance of an injunction prohibiting Defendants from retaliating against Plaintiff, and mandating removal of disciplinary documents from Plaintiff's file and transfer to a different institution of Plaintiff's choice, and requests that criminal charges be filed against Defendants. Injunctive relief Plaintiff seeks would not remedy the alleged past violation of Plaintiff's rights. Additionally, it is outside the Court's jurisdiction to order that criminal charges be filed against Defendants, and when a prisoner seeks equitable relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subject to those conditions. Nelson v. Heiss, 277 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991). Because Plaintiff is no longer housed at KVSP, his equitable relief claims concerning KVSP are moot.

Finally, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaratory judgment is unnecessary and duplicative. Therefore, this action should proceed as one for damages only.

///

### III. **Conclusion and Order**

Plaintiff's complaint states claims under section 1983 against Defendants Northcutt and Martin for retaliation; and against Defendants Northcutt, Martin, Carviness, Lantz, Trujillo, Truitt, and Fambrough for excessive force, but does not state any other claims under federal law. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). In amending his complaint, Plaintiff is advised to take note of the additional standards and admonitions in this section.

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and the Court will dismiss the other claims and defendants, and will forward Plaintiff seven summonses and seven USM-285 forms, along with service instruction.

If Plaintiff opts to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). The Court strongly suggests to Plaintiff that they should not be submitted where (1) they serve only to confuse the record and burden the Court, or (2) they are intended as future evidence. If this action reaches a juncture at which the submission of evidence is appropriate and necessary (e.g., summary judgment or trial), Plaintiff will have the opportunity at that time to submit his evidence.

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," E.D. Cal. R. 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original

complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

    a. File an amended complaint curing the deficiencies identified by the Court in this order, or

    b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Northcutt and Martin for retaliation; and Defendants Northcutt, Martin, Carviness, Lantz, Trujillo, Truitt, and Fambrough for excessive force;

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **September 25, 2009**             /s/ **Gary S. Austin**
                                       UNITED STATES MAGISTRATE JUDGE