**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALENTINE E. UNDERWOOD, | 1:08-cv-00986-AWI-GSA-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST BE GRANTED |
| v. | |
| M. KNOWLES, et al., | (Doc. 54.) |
| Defendants. | OBJECTIONS, IF ANY, DUE IN THIRTY DAYS |

**I.   BACKGROUND**

Valentine E. Underwood ("Plaintiff") is a state prisoner proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. This action now proceeds on Plaintiff's original complaint, filed July 17, 2008, against defendants Northcutt and Martin for retaliation in violation of the First Amendment, and against defendants Northcutt, Martin, Caviness, Lantz, Trujullo, Truitt, and Fambrough for use of excessive force in violation of the Eighth Amendment.[1]

On July 21, 2010, defendants Lantz, Fambrough, Northcutt, Truitt and Trujillo ("Defendants") filed a motion to dismiss this action for failure to exhaust remedies. (Doc. 54.)

---

[1] All other claims and defendants were dismissed by the Court on October 21, 2009. (Doc. 31.) All of the defendants have been served in this action except defendants Martin and Caviness. On November 10, 2010, the Court directed the U.S. Marshal to make another attempt to serve process on Defendants Martin and Caviness, and service is now pending. (Doc. 68.)

1

1  Plaintiff filed an opposition on September 20, 2010, and Defendants filed a reply on September 24,
2  2010. (Docs. 61, 62.)  Defendants' motion is now before the Court.

## II. SUMMARY OF PLAINTIFF'S COMPLAINT[2]

Plaintiff's allegations arise from incidents that occurred while he was incarcerated at Kern Valley State Prison ("KVSP") in Delano, California, and California Correctional Institution ("CCI") in Tehachapi, California.

On November 20, 2006, Plaintiff filed an inmate appeal against Officer Hart for making threatening statements against him.  Plaintiff alleges that on November 21, 2006, Defendants Northcutt and Martin approached Plaintiff because they wanted to know why Plaintiff had been talking to Lieutenant Whitehead the previous day.  Plaintiff told Defendants Northcutt and Martin that he told Lieutenant Whitehead he was having difficulty with some of the officers, including Defendants Northcutt and Martin, since filing the appeal against Officer Hart.  Defendant Northcutt then pepper sprayed Plaintiff and hit him in the face with the pepper spray can.  Defendant Martin struck Plaintiff repeatedly with his baton.  Plaintiff tried to hit back and then lay down on the floor on his stomach.  Defendants Northcutt and Martin continued to kick and punch Plaintiff.  Plaintiff alleges that Defendants Caviness, Lantz, Trujillo, Truitt, and Fambrough also kicked and struck him.  Plaintiff was pepper sprayed again, had a bag pulled over his head, and then was handcuffed.

Lieutenant Whitehead instructed two officers to escort Plaintiff to the clinic, where Dr. Dileo had Plaintiff's head, left hand, and ribs x-rayed.  Dr. Dileo also cleaned a bite wound on Plaintiff's right hand, gave him a tetanus shot, and sutured the area above Plaintiff's right eye.  Dr. Dileo gave Plaintiff some painkillers and a vest to wear over his rib area.  Plaintiff alleges that he also had a swollen left hand, fingers and wrist; lumps all over his head; scratches and abrasions on his lower back; and bruises all over his body.  He also bled from the cut above his right eye, from his nose, and from his right hand.  Plaintiff alleges that he suffered from blurred vision, lower back pain, and nose bleeds as a result of the assault.

///

---

[2] This summary includes Plaintiff's claims in the Complaint found cognizable by the Court on September 25, 2009, and Plaintiff's related allegations, upon which this case now proceeds. (Doc. 25.)

Plaintiff filed an inmate appeal on November 29, 2006, regarding the November 21, 2006 attack. The appeal was ultimately rejected as being untimely. Plaintiff was subsequently found guilty of battery on a peace officer, and he filed an appeal for being denied a fair hearing regarding the November 21, 2006 incident.

Plaintiff alleges that for several days after November 24 or 25, he asked for medical care because his injuries caused him pain, but did not receive any medical care except for some painkillers from MTA Ethridge on November 29, 2006. Plaintiff was seen by Dr. Akano on December 13, 2006, at which time he told Dr. Akano that he was suffering from blurred vision, and lower back pain, and that the bite on his right hand had become infected. After examining Plaintiff, Dr. Akano told Plaintiff that he was in good health and prescribed painkillers and a cream. Plaintiff continued to seek additional medical care. On January 31, 2007, Dr. Akano prescribed Plaintiff some painkillers for his lower back pain, and ordered another x-ray of Plaintiff's back. On February 6, 2007, Plaintiff had his lower back x-rayed.

Plaintiff alleges that Captain Frauenhein approached him on November 23 or 24, 2006, to see his injuries and to inform him that he would be transferred to avoid such an incident in the future. Plaintiff alleges that Defendant Frauenhein told him that Plaintiff's statement regarding the November 21, 2006, incident was consistent with other witnesses' statements.

Plaintiff alleges that Captain Frauenhein and Captain Tyson approached him on February 1, 2007, to inform him that they knew what had actually happened on November 21, 2006, but that he was to be placed in the Security Housing Unit ("SHU") for eight months for assaulting staff, after which he would be transferred elsewhere. Plaintiff alleges that the usual term for assaulting staff is twelve months to eighteen months, but Associate Warden Arlitz agreed with Captains Frauenhein and Tyson, and gave him an eight month term, mitigated to six months.

On February 4, 2007, Plaintiff filed an inmate appeal after having his incoming and outgoing mail disappear, and after finding that Defendant Northcutt had been reassigned to the mail room after the November 21, 2006, incident.

///

///

On March 13, 2007, Plaintiff was transferred to CCI. After Plaintiff arrived at CCI, he was referred to a nerve specialist for the bite on his right hand, to an orthopedic surgeon for injuries to his right hand and right elbow, and for physical therapy for lower back pain.

Plaintiff seeks monetary damages as relief.

### III. UNENUMERATED RULE 12(b) MOTION TO DISMISS FOR FAILURE TO EXHAUST

Defendants argue that Plaintiff's case should be dismissed, because Plaintiff failed to exhaust his administrative remedies before filing suit.

#### A. Statutory Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated. Booth v. Churner, 532 U.S. 731, 741 (2001). "Proper exhaustion[, which] demands compliance with an agency's deadlines and other critical procedural rules . . . ." is required, Woodford v. Ngo, 548 U.S. 81, 90 (2006), and may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." Id. at 83-84.

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 215-16 (2007); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). *"*[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'" Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005). "[A] defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of relief already granted as a result of that process." Id. at 936-37. Therefore, if some remedy is available, Plaintiff has not exhausted his remedies.

///

The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. Wyatt, 315 F.3d at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)). In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. If the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Id.

### B.　CDCR's Administrative Grievance System

The Court takes judicial notice of the fact that the California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084.1 (2007). The process is initiated by submitting a CDC Form 602. Id. at § 3084.2(a). Appeals must be submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. Id. at §§ 3084.5, 3084.6(c). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." Id. at § 3084.5. In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford, 548 U.S. at 85; McKinney v. Carey, 311 F.3d. 1198, 1199-1201 (9th Cir. 2002).

### C.　Defendants' Position

Defendants argue that Plaintiff's case should be dismissed because Plaintiff failed to exhaust administrative remedies before filing suit. Defendants submit evidence that although Plaintiff filed numerous prison appeals during the time he was incarcerated at KVSP, he only completed three of these appeals to the final Director's level, and none of the three appeals concerned the allegations made in this lawsuit. (Decl. of Tarnoff, Exh. A; Decl. of Foston, Exh. A.) Appeal No. KVSP-06-03693 was filed by Plaintiff on November 20, 2006, complaining that Officer Hart yelled at him in a disrespectful manner on November 13, 2006. (Decl. Of Tarnoff, Ex. B.) Appeal No. KVSP-07-00575 concerned the Rules Violation Report ("RVR") that Plaintiff received for his involvement in the November 21, 2006 incident, and although connected to the use of force incident, this appeal

concerned the fairness of the RVR, not the violation of Plaintiff's rights by use of force. (Decl. of Tarnoff, Exh. C.) Appeal No. KVSP 07-00333 concerned an incident of alleged unprofessional conduct on January 30, 2007, when Plaintiff complained to an officer that he was given spoiled milk. (Decl. Of Tarnoff, Exh. D.)

### D. Plaintiff's Opposition

The Court looks to Plaintiff's Opposition, filed on September 20, 2010, and his verified Complaint filed on July 17, 2008.[3] Plaintiff acknowledges that he did not complete the inmate appeals process for all of his claims before filing suit. He asserts that several of his appeals were prevented from being processed to the Director's Level because of interference by the Appeals Coordinator, C. Pfeiffer, and circumstances beyond his control. (Cmp., Doc. 1 at 2 ¶2(C).) In his Opposition, Plaintiff makes five enumerated arguments.

#### 1. Timely Appeal Was Ignored

Plaintiff argues that he submitted a timely appeal concerning the excessive force incident of November 21, 2006, but it was ignored by prison officials and he never received a response.

Plaintiff asserts that on or about November 29, 2006, he submitted an appeal concerning the excessive force incident giving rise to this action, but prison officials failed to process and respond to his appeal. (Cmp., Doc. 1 at 20 ¶21; Decl. of Underwood, Doc. 61 at 17 ¶4.) Plaintiff voiced his concerns about his appeals not being processed and was instructed to give the appeal to Officer Forte who would then give it to Lieutenant Hurley. (Cmp., Doc. 1 at 20 ¶21.) On or about December 4, 2006, Officer Forte told Plaintiff he gave the appeal to Lieutenant Hurley to submit to the Appeals Coordinator. (Decl. Of Underwood, Doc 61 at 17 ¶3.) On December 11, 2006, Plaintiff inquired to the Appeals Coordinator in writing about the appeal. (Cmp., Doc. 1 at 19 ¶13.) On or about December 13, 2006, Captain Frauenheim told Plaintiff he received the appeal from the Appeals Coordinator. (Decl. Of Underwood, Doc 61 at 17 ¶5; Cmp., Doc. 1 at 20 ¶22.) Plaintiff asked Captain Frauenheim about the appeal several times, and Frauenheim stated it was being taken care

---

[3] In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. Plaintiff signed the Complaint under penalty of perjury. (Docs 1.) Therefore, Plaintiff's opposition to the motion to dismiss is based in part on the evidence in his Complaint. Plaintiff's declaration in support of his Opposition is also verified and therefore constitutes admissible evidence. (Doc. 61 at 17.)  Plaintiff's Opposition itself is not verified.

of.  (Decl. Of Underwood, Doc 61 at 17 ¶6.)  On December 26, 2006, Plaintiff sent legal mail to the Office of Internal Affairs, California Prison Focus, and The Prison Law Office, asking for assistance with the appeal.  (Cmp., Doc. 1 at 20 ¶24, Exh. 26.)  On December 27, 2006, Plaintiff wrote to the Center for Constitutional Rights via legal mail explaining his situation and asking for assistance.  (Cmp., Doc. 1 at 20 ¶25, Exh. 26.)  Plaintiff never received a response to this appeal.  (Decl. of Underwood, Doc. 61 at 17 ¶7.)

Plaintiff claims he inquired about this appeal many times.  He submits a copy of a medical appeal dated December 29, 2006, in which he inquired about the excessive force appeal and its whereabouts, stating, "I'm very much concern [*sic*] with a 602 I gave to C/O Forte ASUI who assured me he gave it to ASI Lieutenant Hurley.  I was told by committee to give it 602 to Lieutenant Hurley.  The 602 in question is in reference to a physical altercation with D-yard staff on 11-21-06."  (Opposition, Exh. 1 at 5.)  He also submits a copy of a letter to the Chief of Inmate Appeals, in which he inquired about the appeal concerning the November 21, 2006 incident, "Please also inquire about a 602 I wrote on a incident in which I was beat up by CO's.  It accured [*sic*] on 11/21/06.  I've wrote the Appeals Coordinator asking them if they've received it several times only to receive no response."  (Opposition, Exh. 2 at 5.)  He also submits a copy of an appeal dated January 30, 2007 concerning C/O Johnson's behavior, in which he inquired about the excessive force appeal, declaring under penalty of perjury, "Staff had beat me, kicked me, bite me to point of me needing my head, hand and ribs x-rayed!  I also was given a tetanus shot & antibiotic for the bite wound on my right hand.  This incident accured [*sic*] on 11/21/06.  There is a 602 pending which was submitted on December 4, 2006 to ASUI Lt. Hurley on that incident."  (Opposition, Exh. 3 at 8.)  He also submits a copy of an appeal concerning RVR violations in which he makes a statement dated June 24, 2007 about CCII Pfeiffer, "Also, he didn't review the 602 I submitted on the incident which Captain Frauenheim has!"  (Opposition, Exh. 4 at 2 ¶H.)

### 2. **Defendant Northcutt in the Mailroom**

Plaintiff argues that defendant Northcutt's presence in the mailroom interfered with his ability to use the appeals process.

///

Plaintiff claims that defendant Northcutt was placed in the mailroom during the time that Plaintiff was not receiving publications and letters. Plaintiff alleges that defendant Northcutt interfered with his incoming and outgoing mail, which resulted in obstruction of the processing of his appeals. Plaintiff submits a copy of the appeal he filed against Northcutt in which he states, "This writer has submitted a 602 requesting an investigation into excessive use of force accusations against Correctional Officer Northcutt. The writer claims with evidence that he was assaulted without reason by Correctional Officer Northcutt as well as other Correctional Officers on 11-21-06." (Opposition, Exh. 6 at 3.)

### 3. **Group Appeal**

Plaintiff argues that an appeal filed by a group of inmates, concerning the excessive force against Plaintiff, placed defendants on notice of the excessive force claim in this action.

Plaintiff provides evidence that on December 5, 2006, several witnesses submitted an appeal describing in detail how Plaintiff was the victim of an attempted murder by correctional officers on November 21, 2006. (Cmp. at 11 ¶6, Exh. 4.) The appeal was screened out on December 8, 2006, in a memorandum stating, "You may not submit an appeal on behalf of another inmate or visitor." Id. The appeal was re-submitted on December 18, 2006. Id. Plaintiff contends that this appeal placed the prison on notice of the Eighth Amendment violations, and the contents of the appeal suggest that actions taken by staff were retaliatory. (Oppn. at 9:6-8.)

### 4. **Plaintiff's RVR Appeal**

Plaintiff argues that the appeal he filed concerning his Rules Violation Report addressed the excessive force incident and therefore exhausted his remedies.

Plaintiff provides evidence that Appeal No. KVSP-07-00595, which contains allegations by Plaintiff contesting the result of his RVR following the November 21, 2006 excessive force incident, was exhausted and denied at the Director's Level on October 3, 2007. (Cmp., Doc, 1 at 53, Exh. 3.) Plaintiff argues that this appeal clearly made defendants aware of his injuries and the manner in which they were inflicted. (Id. at 11 ¶5.)

///

///

8

5. **Appeal filed at CCI**

Plaintiff argues that the appeal he filed at CCI, after he was transferred there, addressed the excessive force incident at KVSP and should have been processed instead of being rejected as untimely.

On July 30, 2007, after he was transferred to CCI, Plaintiff submitted an appeal concerning the excessive force incident of November 21, 2006. (Cmp., Doc 1, Exh. 31; Oppn., Exh 8.) In the appeal, Plaintiff claimed he was re-submitting a prior appeal he submitted on or about November 29, 2006, to which he never received a response. Id. The July 30, 2007 appeal was screened out by the Appeals Coordinator on August 9, 2007 as untimely, and he was informed that if he would like to pursue the matter further, he must submit an explanation and supporting documentation explaining why he did not or could not file the appeal timely. Id. On September 26, 2007, Plaintiff appealed the decision to the Director of Appeals in Sacramento. Id.. On November 7, 2007, Plaintiff received a response from N. Grannis, Chief of the Inmate Appeals Branch, informing Plaintiff that he must contact the Appeals Coordinator if he disagreed with the decision about his appeal. Id.

**E.    Defendant's Reply**

With regard to Plaintiff's first and fifth arguments, Defendants maintain that Plaintiff failed to complete the appeals process. Defendants argue that Plaintiff should have submitted a further appeal to the Appeals Coordinator, as instructed by the Appeal Coordinator's response of July 30, 2007. Instead, Plaintiff sent a letter to the Director of Appeals in Sacramento, who instructed Plaintiff to contact the Appeals Coordinator if he disagreed with the decision about his appeal. Because Plaintiff failed to contact the Appeals Coordinator after receiving the July 30, 2007 and November 7, 2007 responses, and instead proceeded to file a complaint at the Court, Defendants argue that he failed to exhaust the remedies available to him.

With regard to Plaintiff's second argument, Defendants assert that Plaintiff has no proof to support the contention that defendant Northcutt interfered with his appeals, and Defendants find the result of Plaintiff's argument – that no prisoner who had a grievance concerning the mail room would ever have to file an appeal because the appeal might be handled by the very staff about which the inmate complained – absurd.

With regard to Plaintiff's third argument, Defendants argue that the Court cannot look to the group appeal because there is nothing to indicate that these claims were taken to the Director's Level as required, and the appeals were not brought by Underwood.

With regard to Plaintiff's fourth argument, Defendants argue that the RVR appeal, which Plaintiff concedes is a due process claim, puts the prison on notice of a due process claim, not an Eighth Amendment claim.

**F.     Discussion**

Defendants have presented evidence that Plaintiff did not complete any appeal concerning his allegations in this lawsuit to the third or Director's Level of review before filing this lawsuit. Plaintiff acknowledges that he did not exhaust his remedies for all of his claims before filing suit, Cmp., Doc. 1 at 2 ¶2(C), but maintains that he exhausted the remedies available to him and placed Defendants on notice of the claims against them.

Plaintiff's assertion that on or about November 29, 2006, he submitted an appeal concerning the excessive force claim upon which this case proceeds, is credible. Plaintiff has declared under penalty of perjury that he followed instructions by prison officials to submit the appeal to Officer Forte, who told Plaintiff he gave the appeal to Lieutenant Hurley to submit to the Appeals Coordinator. Plaintiff claims he received no response to the appeal and then followed up, inquiring at many levels as to the status of the appeal and requesting assistance in processing the appeal. Plaintiff went so far as to re-submit the appeal months later from CCI after he was transferred there. However, Plaintiff has not submitted evidence that he followed the instructions he was given to complete the administrative process. When the appeal was rejected as untimely, Plaintiff was instructed to submit an explanation for the untimeliness to the Appeals Coordinator, but instead he appealed to the Inmate Appeals Branch in Sacramento. On November 7, 2007, Plaintiff received a response from the Chief of the Inmate Appeals Branch, informing Plaintiff that he must contact the Appeals Coordinator if he disagreed with the decision about his appeal. Plaintiff has provided no evidence that he followed the instructions to contact the Appeals Coordinator, and on July 17, 2008, he filed the present lawsuit at the Court. Thus, Plaintiff has not shown that he completed the remedies available to him before filing suit.

1    Plaintiff's argument that he placed Defendants on notice of the excessive force incident when
2  he filed the RVR appeal, and when other inmates filed a group appeal, is without merit. The RVR
3  appeal concerned Plaintiff's complaint that his RVR hearing was improper, not that excessive force
4  was used against him or that he was retaliated against. The group appeal was not filed by Plaintiff
5  and therefore did not exhaust Plaintiff's remedies. Plaintiff's other argument, that defendant
6  Northcutt obstructed the appeals process simply because he worked in the mailroom, fails. Plaintiff
7  has not submitted any evidence that defendant Northcutt's presence in the mailroom hindered
8  Plaintiff's efforts to exhaust his remedies. Moreover, even if Plaintiff's access to the appeals process
9  was obstructed by problems with incoming or outgoing mail at KVSP, such obstruction did not
10 prevent Plaintiff from completing the appeals process after he was transferred from KVSP to CCI.

11   The issue before the Court is whether Plaintiff exhausted the remedies that were available
12 to him. The Prison Litigation Reform Act requires a prisoner to exhaust "such administrative
13 remedies as are available" before suing over prison conditions. 42 U.S.C. §1997e(a). The Booth
14 court determined that the language of the statute, which requires that the "available" "remed[y]"
15 must be "exhausted" before a complaint under § 1983 may be entertained, refers to "exhaustion" of
16 the *process available*. Booth, 532 U.S. at 738-739 (emphasis added.)   It follows, then, that if an
17 inmate fails to exhaust the process that is made available to him, he has not satisfied the requirement
18 of the statute. Plaintiff's own evidence demonstrates that he still had remedies available to him
19 when he filed this lawsuit on July 17, 2008. When Plaintiff's July 30, 2007 appeal at CCI was
20 rejected as untimely on August 9, 2007, Plaintiff was instructed to submit an explanation and
21 supporting documentation explaining why he did not or could not file the appeal timely. (Cmp., Doc
22 1, Exh. 31; Oppn., Exh 8.) Instead, Plaintiff appealed the decision to the Inmate Appeals Branch in
23 Sacramento on September 26, 2007. Id.. Plaintiff was then informed on November 7, 2007, by the
24 Chief of the Inmate Appeals Branch that he must contact the Appeals Coordinator if he disagreed
25 with the decision about his appeal. Id. Plaintiff failed to follow these instructions and proceeded
26 to file suit. Therefore, Plaintiff failed to exhaust his remedies pursuant to §1997e(a).

27   Based on the foregoing, Plaintiff failed to comply with the CDCR's procedural rules to
28 complete the appeals process before filing suit, and he did not otherwise satisfy the exhaustion

requirement under § 1997e(a) before filing this lawsuit. Therefore, Defendants are entitled to dismissal of this action.

### IV.    CONCLUSION AND RECOMMENDATION

Defendants have met their burden of demonstrating that Plaintiff failed to exhaust his remedies prior to filing suit, in compliance with § 1997e(a), and Plaintiff has not submitted evidence of appeals that satisfy the exhaustion requirement. The Court finds that Plaintiff failed to exhaust the administrative remedies available to him before filing suit. Therefore, the Court HEREBY RECOMMENDS that Defendants' motion to dismiss, filed July 21, 2010, be GRANTED, and this action be dismissed in its entirety without prejudice.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within thirty (30) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    January 11, 2011**              /s/ Gary S. Austin
                                            UNITED STATES MAGISTRATE JUDGE